**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|                                  |   |                              |
|----------------------------------|---|------------------------------|
| DIVENSON PETION,                 | : |                              |
|         Plaintiff,               | : | Case No. 3:22-cv-1647 (OAW)  |
|                                  | : |                              |
|    v.                            | : |                              |
|                                  | : |                              |
| PEARSON, et al,                  | : |                              |
|         Defendants.              | : |                              |
|                                  | : |                              |

## <u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

Before the court is Defendants' Second Motion for Summary Judgment and supporting memorandum (together, "Motion").  See ECF Nos. 54 and 54-1. The court has reviewed the Motion, the facts contained in Defendants' Local Rule 56(a)1 statement ("SOF"),[1] ECF No. 54-13, Defendants' exhibits, Plaintiff's response, ECF No. 61, Defendants' reply, ECF No. 62, Plaintiff's sur-reply, ECF No. 65, and the record in this matter.  After careful review of these materials, the Motion is **<u>GRANTED.</u>**

## I.   <u>BACKGROUND</u>

Plaintiff filed a complaint under 42 U.S.C. § 1983 against eleven prison officials asserting violations of his constitutional rights.   *See generally* ECF No. 1.   In the complaint, Plaintiff alleged that on April 27, 2020, officers assaulted him and exposed him

---

[1] A party moving for summary judgment must file "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."  D. Conn. L. Civ. R. 56(a)1.  "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party . . . , or the Court sustains an objection to the fact."  *Id.*   Plaintiff has not filed a Rule 56(a)2 statement, so Defendants' asserted facts might be deemed admitted, but because this ruling rests on procedural grounds, the court need not address this issue.

to a chemical agent in retaliation for certain complaints Plaintiff had made.  After initial review, the court permitted Plaintiff to proceed on claims of excessive force in violation of the Eighth Amendment, and retaliation in violation of the First Amendment.  ECF No. 13.

Defendants' SOF, unsurprisingly, gives a very different account of the incident in questions.  Therein, Defendants assert that Plaintiff was returning to his cell when he made statements that they construed as an attempt to recruit inmates to a gang.  ECF No. 54-13 ¶ 3.  Plaintiff was placed on administrative detention as a consequence.  *Id.* ¶ 6.  When officers arrived at Plaintiff's cell to escort him to segregation, though, Plaintiff was uncooperative, lunging away from them, trying to elbow one of them, and struggling against their attempts to put him in restraints *Id.* ¶¶ 8–11.

Plaintiff was issued a disciplinary ticket for attempted assault.  *Id.* ¶ 13.  A hearing officer upheld the ticket at a disciplinary hearing.  *Id.* ¶ 14.  Plaintiff appealed the disciplinary hearing decision, which appeal was denied.  *Id.* ¶¶ 14–16.  Plaintiff did not further appeal the disciplinary decision.  *Id.*

## II.    <u>LEGAL STANDARD</u>

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Substantive law determines which facts

are material.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ."  *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party.  *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012).  But the nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation," but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011)) (internal quotation marks omitted).  To defeat a motion for summary judgment, the nonmoving party must offer concrete evidence upon which "the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis in original).

III.    **DISCUSSION**

Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies before filing suit.  The Prison Litigation

Reform Act requires a prisoner to exhaust available administrative remedies before a federal court may hear his case.  42 U.S.C. § 1997e(a).  This means that an inmate must both follow the administrative review process as laid out by the relevant prison system, "and providing the level of detail necessary in a grievance to comply with the grievance procedures."  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Jones v. Bock,* 549 U.S. 199, 218 (2007)) (internal quotation marks omitted); *see also Woodford v. Ngo*, 548 U.S. 81, 90 ("Administrative law . . . require[s] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  "The exhaustion inquiry thus requires that [courts] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).  This inquiry must be repeated for each claim contained in the prisoner's complaint.  *See Simms v. Cuzio*, No. 3:21CV00492 (SALM), 2022 WL 3107150, at *6 (D. Conn. Aug. 4, 2022) ("[T]he inmate must exhaust his administrative remedies for each claim he asserts in federal court.") (quoting *Jones v. Johnson*, No. 3:15CV01135(DJS), 2017 WL 1843692, at *3 (D. Conn. May 8, 2017)) (internal quotation marks omitted).

DOC lays out its grievance process in Administrative Directive 9.6 ("A.D. 9.6").[2] *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (summary order).  There are two

---

[2] "Courts look to the version of A.D. 9.6 that was in effect at the time of the events in question."  *Nicholson v. Mackenzie*, No. 3:22-CV-01165 (VDO), 2026 WL 457547, at *4 (D. Conn. Feb. 18, 2026). Defendants state that the current version of A.D. 9.6 is the relevant version, but the current version became effective on April 30, 2021, and the incident in question occurred on April 27, 2020.  Thus, the current version is inapplicable here.  *Goode v. Jones*, 2025 WL 2653161, at *4 n.6 (assessing exhaustion under the 2013 version of A.D. 9.6 "[b]ecause the events in question occurred on March 27–28, 2021—before the current version of A.D. 9.6 went into effect").  This may be reason enough to deny the Motion.  *See, e.g.,*

provisions of Administrative Directive 9.6 ("A.D. 9.6") at issue here: the "Inmate Grievance Procedure" set forth in A.D. 9.6(6), and an "Appeal of a Disciplinary Action." A.D. 9.6(10).

Under the "Inmate Grievance Procedure", an inmate first must verbally seek informal resolution with staff, and if informal resolution is unsuccessful, the inmate then may submit a written request on a CN 9601 form, to which prison officials must respond within fifteen business days of receiving it. If the issue is not resolved through the written request, the inmate must file a Level 1 grievance on a CN 9602 form within thirty calendar days of the incident at issue. If the Level 1 grievance is rejected, the inmate may appeal by filing a Level 2 grievance on a CN 9604 form within five days of receiving the rejection. A Level 2 grievance is the final level of appeal, with certain exceptions not relevant here.

An inmate appealing a disciplinary action must file a CN 9602 form within fifteen days of receiving notice of the disciplinary decision. The District Administrator must review the appeal within fifteen business days of receiving it. There is no further appeal possible after the District Administrator's review.

There is no dispute that Plaintiff filed a CN 9602 form on May 26, 2020. But Plaintiff testified at his deposition that he also filed a separate grievance related to the excessive use of force to which he never received a response.[3] ECF No. 54-10 at 77: 12–24, 80:4–8. Defendants have submitted affidavits from Officers Kenneth Wright and Morrell

---

*Toussaint v. Guadarama,* 2022 WL 19337, at *4 (denying a motion to dismiss for failure to exhaust because the defendants did not attach the applicable version of the directive to the motion). But because the 2013 version of A.D. 9.6 is publicly accessible online, *see Coleman v. Charles*, No. 3:23-CV-1581 (JAM), 2024 WL 1991013, at *3 n.19 (D. Conn. May 6, 2024) (taking judicial notice of 2013 version of Administrative Directives via a permalink to the DOC's website (https://perma.cc/82AW-PKJG)), the court will take judicial notice of the 2013 version of A.D. 9.6 and refer to that version throughout this ruling.

[3] Plaintiff attached a copy of his CN 9602 form to his complaint, *see* ECF No. 1 at 9–12, but he did not attach a copy of his grievance.

Walker, each of whom states that he searched DOC's grievance logs and records and "found no grievances or other administrative remedies filed by inmate Petion" related to the April 27, 2020, incident.  ECF No. 54-4 ¶ 12; ECF No. 54-11 ¶ 5.

The court notes that Plaintiff's self-serving testimony is insufficient, by itself, to create a genuine dispute of fact.  *See Chambers v. Johnpierre*, No. 3:14CV1802 (VAB), 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016) (concluding that an inmate's "unsupported statements that he filed grievances and grievance appeals" failed to create a genuine dispute of fact); *Simmons v. Sheckler*, 2018 WL 3596748, at *3 (concluding that plaintiff's deposition testimony, in which "he claim[ed] that he filed both an Inmate Request Form and a grievance detailing the incident with [the defendant]" was insufficient, by itself, to create a genuine dispute of fact).  But more importantly, Plaintiff's own cited testimony demonstrates that he did not exhaust his administrative remedies.  According to A.D. 9.6, if prison officials do not respond to an inmate's grievance, then the inmate should file a Level 2 grievance after the period of time in which to respond has elapsed. *See Ramos v. Cheney*, No. 3:24-CV-00006 (MPS), 2025 WL 1835971, at *4 (D. Conn. July 3, 2025) (noting that "the Administrative Directives require an inmate to file a Level 2 grievance even if the inmate receives no response to his Level 1 grievance.").  Plaintiff states that he made no further attempts to pursue the grievance because he could "just tie [it] into this lawsuit anyway . . . ."  ECF No. 54-10 at 81:24–82:12. Accordingly, he admits he did not file a Level 2 grievance, which failure generally equates to a failure to exhaust.  *See Dean v. Iozzia*, No. 3:18-CV-1861 (KAD), 2020 WL 376802, at *5 (D. Conn. Jan. 23, 2020), *aff'd*, No. 20-729, 2022 WL 619693 (2d Cir. Mar. 3, 2022) (granting

6

summary judgment in favor of defendants where plaintiff maintained he received no response to his Level 1 grievance but the record contained no evidence that plaintiff filed a Level 2 grievance); *Tucker v. Gordelis*, No. 3:20-CV-01810(AWT), 2024 WL 5320562, at *7 (D. Conn. Feb. 29, 2024), appeal dismissed, No. 25-52, 2025 WL 1865279 (2d Cir. May 7, 2025) (concluding that, even if DOC staff ignored the plaintiff's grievances, "summary judgment would still be appropriate because A.D. 9.6 provides a path for appealing unresponded-to-grievances to the next level.").

But "a disciplinary appeal can serve to exhaust administrative remedies where the issue on which the claim is based arose at or derives from the disciplinary hearing." *Staton v. Juxon-Smith*, No. 3:22-CV-855 (KAD), 2024 WL 1639538, at *5 (D. Conn. Apr. 16, 2024).  Thus, the court also must determine whether Plaintiff's disciplinary appeal exhausted his excessive force and retaliation claims.

Here, though, the court concludes that Plaintiff's disciplinary appeal does not exhaust his excessive force and retaliation claims.  In the first instance, Plaintiff's claims did not derive from his disciplinary hearing.  Moreover, review of the appeal shows that Plaintiff's focus therein was the "many procedural errors that took place during the incident pre-hearing investigation, and the hearing itself."  ECF No 1 at 9–12.  He complains that officers did not timely turn on the camera to record Plaintiff's extraction; that the state police were not called; that Defendant Pearson signed his own disciplinary report; that he was denied a timely hearing and an adequate investigation; that his advisor did not properly advise him; and that the hearing decision was based on improper evidence.  These are procedural issues unrelated to the claims asserted in the complaint.

7

He does also state that he was maced immediately upon Defendant Pearson's entrance into his cell, and that one eye was hurt badly by the officers, but those allegations were made to show that officers didn't follow DOC directives and that the hearing officer was biased against Plaintiff. The court cannot find that these comments in the disciplinary appeal exhausted Plaintiff's administrative remedies. He says nothing about retaliation, and he does not describe the force that was used against him. His statements in the appeal would not alert prison staff of the need to investigate the claims in his complaint. And indeed, the denial of the appeal focused on whether a "serious due-process failure occurred in the disposition of [Plaintiff's] disciplinary report." ECF No. 54-8 at 6. *See Paschal-Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *5 (D. Conn. June 28, 2019) (finding that a disciplinary appeal did not exhaust an excessive force claim); *Rashid v. Kurtulus*, 2024 WL 4111610, at *2 (D. Conn. Sept. 6, 2024) (concluding that a disciplinary appeal did not exhaust Eighth Amendment claims); *Davis v. Jackson*, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *7 (S.D.N.Y. Sept. 30, 2016) (noting that filing an administrative appeal from an underlying disciplinary proceeding was "an inappropriate means of exhaustion for Plaintiff's retaliation claims").

The only way Plaintiff's claims still might go forward would be if administrative remedy procedures were unavailable to him. The Supreme Court of the United States has held that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." The Court identified three circumstances wherein the procedure for internal administrative remedies can be deemed unavailable to prisoners: where "it operates as a simple dead end—with officers unable or consistently unwilling to provide

8

any relief to aggrieved inmates," where the "administrative remedy scheme [is] so opaque that it becomes, practically speaking, incapable of use," and where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.  Notably, this is not an exhaustive list. *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).  In considering the issue of availability, however, the court is guided by these illustrations.

The court cannot conclude that the administrative procedure was a "dead end" or was prohibitively opaque, because Plaintiff utilized the administrative remedy scheme to appeal the disciplinary finding.  *See Raynor v. Connecticut*, No. 3:22-CV-1103 (OAW), 2023 WL 4763218, at *5 (D. Conn. July 26, 2023) ("As [p]laintiff was able to file a grievance and grievance appeal, and makes no showing that prison officials are unwilling to provide any relief to properly-filed grievances, the court finds that administrative remedies were available to him."); *Rosa v. Biela*, No. 3:22-CV-865 (VAB), 2025 WL 1488024, at *7 (D. Conn. May 23, 2025) ("The Second Circuit has recognized Connecticut DOC Administrative Directives as 'rigorous in some respects,' but not so opaque as to be unavailable[.]'") (quoting *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016)). Plaintiff does assert that he could not file his grievance until he had identified all the officers who had been present during the incident, and that he could not do that until his Freedom of Information Act request had been answered.  He also asserts that an officer took a copy of his grievance and certain legal documents.   But even taking these allegations as true, they do not show unavailability of the grievance process.   The confiscated legal documents do not appear to pertain to grievances at all, and the

grievance whose copy was confiscated already was submitted, presumably through the very process Plaintiff alleges was unavailable to him.  And none of these allegations can justify why Plaintiff failed to appeal his grievance past Level 1.  Therefore, these arguments are rejected.

Finally, Plaintiff seems to argue that the grievance process was unavailable because prison officials thwarted his attempts to use it.  He states that prison officials tell inmates that disciplinary appeals are part of the exhaustion process, and if the alleged violation is "a part of the same matter" as the disciplinary appeal, then an inmate does not need to file a separate grievance.  ECF No. 61 at 14.  This appears to be a restatement of what the court already herein has recognized: that, at times, disciplinary appeals can exhaust a federal claim.  However, as discussed above, the violations alleged in this complaint are not "a part of the same matter" as Plaintiff's disciplinary appeal.  The disciplinary appeal focused on the perceived procedural deficiencies of the disciplinary process, not the incident itself.  Therefore, this argument also is rejected.

## IV.    CONCLUSION

For the reasons discussed herein, the court **GRANTS** the Motion.  The Clerk is asked to please enter judgment consistent with this order and to close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 9th day of June, 2026.

/s/
Omar A. Williams
United States District Judge
